<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

| | | |
|---|---|---|
| In re: ANNETTE M. OAKLEY, | ) | Civil Action |
| | ) | No. 14-cv-01096 |
| Debtor | ) | |
| | ) | Bankruptcy |
| | ) | No. 12-18456 |
| _____ | ) | |
| | ) | |
| NUZIO CARTO, JR., | ) | |
| | ) | |
| Plaintiff-Appellee | ) | |
| | ) | Adversary |
| v. | ) | No. 13-00053 |
| | ) | |
| ANNETTE M. OAKLEY, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| _____ | ) | |

\*   \*   \*

APPEARANCES:

       DAVID A. SNYDER, ESQUIRE
           On behalf of Appellant

       MITCHELL LEE CHAMBERS, JR., ESQUIRE
           On behalf of Appellee

\*   \*   \*

# **O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge

[SPACE INTENTIONALL LEFT BLANK]

# T A B L E   O F   C O N T E N T S

Page

SUMMARY OF DECISION........................................... 3

JURISDICTION.................................................. 4

FACTS AND PROCEDURAL HISTORY.................................. 4

    The Parties............................................. 5

    The Loan................................................ 6

    Terms of Promissory Note................................ 7

    The BMW Automobiles..................................... 9

    Failure to Sell Weatham Street Property................ 10

    Demand for Payment and State Suit...................... 11

    The Bankruptcy Action.................................. 11

        Chapter 7 Schedules and Statements of Financial
        Affairs............................................ 12

            *Initial Schedules*............................ 12

            *Statement of Financial Affairs*............... 13

            *Amended Schedule B*........................... 14

            *Amended Statement of Financial Affairs*........ 15

        Trustee Report..................................... 16

    The Adversarial Action................................. 16

    The Bankruptcy Court Decision.......................... 18

    The Bankruptcy Appeal.................................. 21

STANDARD OF REVIEW........................................... 22

CONTENTIONS OF THE PARTIES................................... 23

    Contentions of Appellant............................... 23

    Contentions of Appellee................................ 24

DISCUSSION................................................... 25

    Timeliness of Briefs................................... 25

    Bankruptcy Court's Grant of Relief to Plaintiff-
    Appellee and Denial of Discharge to Defendant-
    Appellant Under 11 U.S.C. § 727(a)(4)(A)............... 27

        Relief Not Specifically Requested.................. 28

        Weight of the Evidence............................. 33

    Bankruptcy Court's Denial of Relief to Plaintiff-
    Appellee Under 11 U.S.C. § 523(a)...................... 36

CONCLUSION................................................... 38

This matter is before the court on the Notice of
Appeal dated February 24, 2014 by debtor/defendant-appellant
Annette M. Oakley.  In this bankruptcy appeal, Ms. Oakley
contests the Order and accompanying Memorandum of United States
Bankruptcy Judge Bruce Fox dated and filed December 30, 2013,[1] by
which Judge Fox sustained creditor/plaintiff-appellee Nunzio
Carto, Jr.'s objection to discharge pursuant to 11 U.S.C.
§ 727(a)(4), and, accordingly, denied Ms. Oakley's petition for
a discharge under Chapter 7 of the Bankruptcy Code.[2]

## SUMMARY OF DECISION

For the reasons expressed below, I affirm the
December 30, 2013 Order of the bankruptcy court.

First, I deny plaintiff-appellee's request that I
decline to entertain this timely-filed appeal because
appellant's brief was not timely filed.  I deny that request
because plaintiff-appellee's brief was, itself, tardier than
appellant's and did not demonstrate that appellee was prejudiced
by appellant's delay.

Next, I affirm the bankruptcy court's Order sustaining
plaintiff-appellee's objection and denying defendant a discharge

---

[1]    The Order and accompanying Memorandum were dated and filed
December 30, 2013 in Adversary Number 13-00053 as documents 23 and 22,
respectively; and in Bankruptcy Number 12-18456 as documents 75 and 74,
respectively.

[2]    On March 27, 2014 the Brief of Appellant, Annette M[.] Oakley was
filed ("Brief of Appellant").  On May 22, 2014 the Brief of Appellee[, Nuzio
Carto, Jr.] was filed ("Brief of Appellee").

-3-

pursuant to 11 U.S.C. § 727(a)(4).  I affirm the Order because defendant-appellant received sufficient notice that plaintiff-appellee was seeking such relief, and because the bankruptcy court's decision to grant such relief was not against the weight of the evidence.

Finally, I do not address the merits of plaintiff-appellee's contention that the bankruptcy court erred in finding that he did not meet his burden of proof at trial on his claim that defendant-appellant's debt to him should be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).  I do not address that claim because plaintiff-appellee failed to file a cross-appeal and, thus, that claim of error is not properly before me.

### JURISDICTION

This Court has subject matter jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1).

### FACTS AND PROCEDURAL HISTORY

The facts and procedural history are gleaned from the December 30, 2013 Memorandum of the bankruptcy court, the record of this matter, and, to the extent that they are in agreement, the briefs of the parties.

**The Parties**

Debtor/defendant-appellant Annette M. Oakley was a practicing attorney in the spring of 2011 when she obtained the subject loan (described below) which is at the heart of the underlying dispute between the parties. Ms. Oakley was admitted to practice in the state and federal courts of New Jersey and Pennsylvania. However, her license to practice in Pennsylvania had lapsed because of unpaid fees. At the time of trial in the adversary action in the bankruptcy court, Mr. Oakley was subsisting on partial disability payments.[3]

Creditor/plaintiff-appellee Nunzio Carto, Jr. was a funeral home director in the spring of 2011. In December 2011, when he was approximately 83 years old, Mr. Carto turned over the operation of his funeral business to his son-in-law and longtime employee, James Guercio. Mr. Carto also granted Mr. Guercio a power of attorney to oversee Mr. Carto's signing of checks.[4]

At the time of the loan, Ms. Oakley was a friend of Mr. Carto's former wife (they later divorced) and did some collections work as an attorney on behalf of Mr. Carto's funeral business. Ms. Oakley discussed her proposed loan request with

---

[3]     Memorandum, ¶ 2.

[4]     Id., ¶¶ 2, 20.

Mr. Carto's wife (before the divorce) who did not oppose the request.[5]

## The Loan

In March 2011, Ms. Oakley approached Mr. Carto and offered to sell him a partial interest in real estate located at 6984 Weatham Street, Philadelphia, Pennsylvania ("the Weatham Street property"), which she owned as a tenant in common with her mother and aunt. Ms. Oakley proposed a price of $65,000.00 for her interest in the Weatham Street property.[6]

Mr. Carto declined the offer to purchase Ms. Oakley's share in the Weatham Street property. Ms. Oakley then sought, instead, to borrow the $65,000 from Mr. Carto to purchase a 2007 BMW M6 automobile.[7]

Mr. Carto had previously lent money to family members and friends, and occasionally requested that the borrower acknowledge the debt.[8]

Given Ms. Oakley's friendship with his wife, and because his wife did not oppose his lending the money to Ms. Oakley, Mr. Carto agreed to the loan -- the largest he had ever made. Mr. Carto asked Ms. Oakley to prepare a promissory note,

---

[5]     Memorandum, ¶ 6.

[6]     Id., ¶¶ 3-4.

[7]     Id., ¶ 4.

[8]     Id., ¶ 14.

requesting that she specify that the loan of $65,000 would mature in one year.[9]

Mr. Carto gave Ms. Oakley a check in the amount of $30,000.00 on March 2, 2011, prior to his receipt of the Promissory Note.[10]

Ms. Oakley delivered the Promissory Note to Mr. Carto on March 3, 2011.[11]  Mr. Carto did not read the Promissory Note immediately upon receipt of the document.[12]  Mr. Carto gave Ms. Oakley a second check, this one in the amount of $35,000.00, the following day, March 4, 2011.[13]

### Terms of Promissory Note

Ms. Oakley drafted the Promissory Note herself.[14]  It states, among other things, that the principal amount of the loan was $80,000.[15]

The note further states that repayment "shall be made from the borrower's portion of ANY and ALL sale proceeds" of the Weatham Street Property, the sale of which Ms. Oakley promised

---

[9]     Memorandum, ¶¶ 6, and 14-15.

[10]    Id., ¶¶ 7-9.

[11]    The note was dated March 2, 2011, but signed and notarized March 3, 2011.  Id., ¶ 8.

[12]    Id., ¶ 16.

[13]    Id., ¶ 7.

[14]    The complete, three-page Promissory Note is Exhibit 9 in the record submitted in this appeal.

[15]    Memorandum, ¶ 9.

to "pursue, in good faith, on the Lender's behalf...so that such sale should take place within twelve (12) months of the date of this instrument."[16]

The note further states that any amount Ms. Oakley received from the sale of her share in the Weatham Street Property in excess of $80,000 would be paid to Mr. Carto "as costs for use of" the $65,000 he was lending her.[17]  Conversely, should Ms. Oakley's share of the property sell for less than $80,000, Ms. Oakley promised to pay any deficiency within six months of the property being sold.[18]

The loan was further secured by Ms. Oakley's newly purchased 2007 BMW M6 automobile.  Ms. Oakley agreed not to encumber the Weatham Street Property or sell the 2007 BMW M6 automobile "until payment to Lender is satisfied in full."[19]

 At the time Ms. Oakley sought her loan from Mr. Carto" in March 2011, defendant and her mother investigated selling the Weatham Street property, but were unable to do so because Ms. Oakley's aunt (who was a tenant in common with Ms. Oakley's mother in the Weatham Street property) was not speaking

---

[16]     Memorandum, ¶ 10.

[17]     Promissory Note, page 1.

[18]     Memorandum, ¶ 10.

[19]     Ms. Oakley additionally promised that if she died in an accident in which the BMW was "totaled or destroyed," Mr. Carto would then receive the insurance proceeds.  Id., ¶ 12.

to either Ms. Oakley or her mother and refused to sign a listing agreement.[20]

### The BMW Automobiles

Using the proceeds of the loan from Mr. Carto, Ms. Oakley purchased a 2007 M6 BMW automobile for $52,000.00.[21]

Ms. Oakley did not explain how she spent the remaining $13,000.00 of the $65,000.00 which Mr. Carto loaned her.[22]

In July 2011, "just a few months after its purchase," Ms. Oakley sold the 2007 BMW M6 automobile to the car-buying service webuyanycar.com for $38,000.00.[23]

The parties dispute whether or not Ms. Oakley told Mr. Carto that she had sold the car.  However, it is undisputed that she did not seek his approval prior to the sale, pay over any of the proceeds, or quit-claim her interest in the Weatham Street property.[24]

---

[20]   Memorandum, ¶¶ 30-31.

[21]   Id., at page 6.  Ms. Oakley has yet to explain how she spent the remaining $13,000 of the loan proceeds.  Id.

[22]   Id., ¶ 22.

[23]   Id., ¶ 23.

Ms. Oakley testified at the one-day bench trial, held on August 8, 2013 in the bankruptcy court, that she sold the 2007 BMW because it had been vandalized by key scratches and the car's grill markers had repeatedly been stolen.  Ms. Oakley replaced the stolen markers before she sold the car.  Id., at page 7.

[24]   Id., at page 7.

Ms. Oakley used the proceeds from the sale of the 2007 BMW to buy a 2009 BMW from a different dealership for $32,000. She paid unspecified expenses with the $6,000.00 remaining from the $38,000.00 she received from webuyanycar.com.[25]

Then, in December 2011, Ms. Oakley sold that second (2009) BMW -- also to webuyanycar.com -- for $16,000.00.  Ms. Oakley did not explain why she sold the second BMW or what she did with the proceeds of that second sale. [26]

### Failure to Sell Weatham Street Property

Ms. Oakley's aunt refused to consent to any listing or sale of the Weatham Street property, and "[a]t some point before the end of the summer in 2011," Ms. Oakley became aware that she would need to file a partition action in order to sell the Weatham Street property.[27]

Ms. Oakley did not initiate such an action because she did not realize what a partition action involved and did not have the funds to initiate the action.[28]

Ms. Oakley did not inform Mr. Carto that she was not going to bring a partition action concerning the Weatham Street

---

[25]     Memorandum, ¶¶ 25-26.

[26]     Id., ¶ 27.

[27]     Id., ¶ 32.

[28]     Id.

property, nor that she did not believe that she had the funds to bring such an action.[29]

## Demand for Payment and State Suit

In March 2012, Mr. Carto demanded repayment of the loan.  Ms. Oakley did not repay the loan.[30]  Mr. Carto then brought a breach-of-contract action against Ms. Oakley in state court.[31]  The state-court action was stayed by the filing of Ms. Oakley's bankruptcy petition, which was initially filed under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301-1330, on September 7, 2012.[32]

## The Bankruptcy Action

As just noted, Ms. Oakley, represented by counsel, filed a petition under Chapter 13 of the Bankruptcy Code on September 7, 2012.[33]

Ms. Oakley's case was initially dismissed by an Order dated October 12, 2012 when she failed to file all the required documents, despite an extension of time in which to do so.[34]

---

[29]    Memorandum, ¶ 33.

[30]    Id., at page 8.

[31]    Id., ¶ 35.  Neither the Memorandum, nor the notes of testimony of trial, identifies in which state court the action was filed.

[32]    Id., ¶¶ 35-36.

[33]    Id., ¶ 36.

[34]    Ms. Oakley testified at the August 8, 2013 bench trial that she had failed to file all of the required documents but had not received notice that the documents were missing because she was living in New Jersey, rather than at the Philadelphia address identified in her petition.  Id., at page 9.

On November 6, 2012, the bankruptcy court granted a motion by Ms. Oakley to vacate the October 12, 2012 dismissal and to convert her Chapter 13 bankruptcy petition to one under Chapter 7.[35]

On November 9, 2012, Ms. Oakley filed her required bankruptcy Schedules and Statement of Financial Affairs in support of her Chapter 7 petition.  The bankruptcy court set February 10, 2013 as the last day for any party to object to discharge or dischargeability.[36]

**Chapter 7 Schedules and Statements of Financial Affairs**

***Initial Schedules***

As noted above, Ms. Oakley filed her initial Schedules and her Statement of Financial Affairs on November 9, 2012.

On her initial Schedule A, Ms. Oakley Stated that her interest in the Weatham Street property was worth $80,000.00. However, she also noted with respect to that property: "One third interest in property.  Roughly $25,000.  Debtor willing to surrender.  Valuation based upon B[oard of ]R[evision of ] T[axes]."[37]

---

[35]    Memorandum, at page 9.

[36]    Id., at ¶ 39.

[37]    Id., ¶ 43.

At trial, Ms. Oakley testified that the $25,000.00 figure was a tax-assessment value and that the property was actually worth (that is, had a fair market value of) $300,000.00, with her interest in the property worth $80,000.00 or more.[38]

On her initial Schedule B, Ms. Oakley did not disclose any unpaid legal fees for work performed by her in prior civil-rights cases.[39]  However, in her initial Schedule B, Ms. Oakley did disclose that she was a party to four lawsuits within the one year preceding her bankruptcy petition.  Two of the four suits listed were legal malpractice actions against Ms. Oakley.  One of the four suits listed was Mr. Carto's state-court action for breach of contract against Ms. Oakley concerning the $65,000.00 loan and promissory note.[40]

In her initial Schedule D, Ms. Oakley listed one of the two malpractice-action plaintiffs (Victoria Cimino) as holding a judgment lien against Ms. Oakley's property.[41]

### *Statement of Financial Affairs*

On her initial Statement of Financial Affairs filed in the bankruptcy court, Ms. Oakley answered "None" to the question

---

[38]    Memorandum, ¶ 43.

[39]    Id., ¶ 44.

[40]    Id.

[41]    Id.

asking whether she had transferred any property out of the ordinary course of her business or financial affairs during the two-year period preceding her bankruptcy petition.[42]

### *Amended Schedule B*

On December 10, 2012, Ms. Oakley filed an amended Schedule B.

Ms. Oakley's amended Schedule B included, as accounts receivable by her, an award of $25,000.00 in attorney fees in a case she identified as <u>William McKenna and Raymond Carnation v. City of Philadelphia</u>, Nos. 98-5835, and 99-1163.[43]

Ms. Oakley testified that she amended her Schedule B on December 10, 2012 to include the $25,000.00 in statutory attorney fees she was awarded in the <u>McKenna</u> case because she actually received those fees in November 2012.

The fees in the <u>McKenna</u> case were awarded to Ms. Oakley by my colleague, United States District Judge Mary A. McLaughlin in her Order and accompanying Memorandum dated and filed October 25, 2012 (documents 352 and 351, respectively, in civil action number 98-cv-05835).[44]  Ms. Oakley had been seeking

---

[42]    Memorandum, ¶ 45.

[43]    <u>Id.</u>, ¶ 46.

[44]    <u>Id.</u>; see also <u>McKenna v. City of Philadelphia</u>, 2012 WL 5269218 (E.D.Pa. Oct. 25, 2012)(McLaughlin, J.).

an award of attorney fees in the <u>McKenna</u> case since May 2012, at the latest.[45]

### *Amended Statement of Financial Affairs*

On February 1, 2013, as further described below, Mr. Carto filed a Complaint Seeking Non-Dischar[ge]ability in Core Adversary Proceeding ("Adversary Complaint") against Ms. Oakley.

On February 6, 2013, five days after Mr. Carto filed his Adversary Complaint, Ms. Oakley again amended the documents supporting her bankruptcy petition.  Specifically, Ms. Oakely filed an amended Statement of Financial Affairs disclosing, for the first time, her July 2011 sale of the 2007 BMW M6 automobile, her subsequent purchase of the 2009 BMW automobile, and its sale in December 2011.[46]

Ms. Oakley testified at trial that the February 6, 2013 amendment to her Statement of Financial Affairs was in response to the filing of Mr. Carto's Adversarial Complaint on February 1, 2013.[47]

Ms. Oakley, an attorney herself, testified that she did not think that she was required to disclose those two BMW automobiles in the portion of the Statement of Financial Affairs

---

[45]    Memorandum, page 27.

[46]    <u>Id.</u>, ¶ 54.

[47]    Transcript of Trial on the [Adversarial] Complaint Before the Honorable Bruce I. Fox[,] United States Bankruptcy Judge dated August 8, 2013 ("Trial Transcript"), at page 67.

-15-

listing "all other property, other than property transferred in
the ordinary course of the business or financial affairs of the
debtor, transferred either absolutely or as security within two
years immediately preceding the commencement of this [bank-
ruptcy] case".[48]  Her rationale was because the vehicles were not
transferred to her friends or family within the last four years,
and because her attorney did not ask her about such transfers.[49]

### Trustee Report

The Chapter 7 Trustee conducted an examination of Ms.
Oakley in December 2012 and indicated that he intended to
investigate the possible existence of assets to distribute to
Ms. Oakley's creditors.  When the Chapter 7 Trustee submitted
his final report, he disclosed that the only assets which he had
recovered were the fees attorney fees paid to Ms. Oakley in
November 2012 (her fee for the <u>McKenna</u> case)[50].

### <u>The Adversarial Action</u>

Mr. Carto did not file a proof of claim in Ms.
Oakley's bankruptcy action.[51]  Rather, as noted above, Mr. Carto
filed an Adversarial Complaint against Ms. Oakely on February 1,
2013.

---

[48]     Memorandum, ¶ 54.

[49]     <u>Id.</u>, ¶ 55.

[50]     <u>Id.</u>, ¶¶ 56-57.

[51]     <u>Id.</u>, ¶ 58.

The Adversarial Complaint concerns the March 2011 loan made by Mr. Carto to Ms. Oakley and promissory note regarding that loan.

In his Adversarial Complaint, Mr. Carto avers, among other things, the following:

> 18.   The Defendant either sold the 2007 M6 BMW, transferred the 2007 M6 BMW, or never disclosed the 2007 M6 BMW to the Bankruptcy Court[,] which would constitute "bad faith" and/or "fraud" on behalf of the Defendant.
>
> 19.   As previously stated, there is nothing in the Defendant's Bankruptcy showing that she owned the 2007 M6 BMW on her schedules or even in paragraph 10 that said items was (sic) transferred on her Statement of Financial Affairs.
>
> 20.   The Defendant had an obligation to disclose this information to the Bankruptcy Court and failed to disclose said information.
>
> 21.   Defendant was under oath and had an affirmative duty to disclose this information to the Chapter 7 Trustee and failed to disclose this information, even after Defendant amended her schedules.
>
> 22.   Furthermore, the whole transaction began in March of 2011 and the Defendant filed a Bankruptcy in September of 2012, approximately 18 months later, and never mentioned the 2007 M6 BMW to (sic) her schedules or to the Court.
>
> 23.   Defendant failed to mention anything to the Chapter 7 Trustee regarding the 2007 M6 BMW when the 341 Meeting was conducted and has failed to disclose this information to the Chapter 7 Trustee or to the Bankruptcy Court.[52]

---

[52]   Adversarial Complaint, ¶¶ 18-23.

The prayer for relief in the Adversarial Complaint requests that the bankruptcy court deem Ms. Oakley's debt to Mr. Carto non-dischargeable under 11 U.S.C. § 523([a]); allow Mr. Carto to proceed against Ms. Oakley with any state court remedies; and deny Ms. Oakley a bankruptcy discharge under 11 U.S.C. § 727.[53]  Mr. Carto also included a catch-all request that the bankruptcy court grant him "such other relief as may be necessary and proper under the law."[54]

As explained below, the bankruptcy court granted some, but not all, of the relief requested by plaintiff Carto in the adversary action below.  Specifically, the bankruptcy court granted plaintiff's request that defendant-debtor be denied a bankruptcy discharge, but denied plaintiff's request that defendant's debt to plaintiff be declared non-dischargeable.

### The Bankruptcy Court Decision

A one-day trial on plaintiff's Adversary Complaint was held before United States Bankruptcy Judge Bruce Fox on August 8, 2013.

At that time, plaintiff-appellee Carto presented the testimony of defendant-appellant Oakley, testified himself, and presented the testimony of Mr. Guercio (his son-in-law and attorney-in-fact).  Each witness was subject to cross

---

[53]    Adversarial Complaint, page 3, ¶¶ a. through c.

[54]    Id., page 3, ¶ d.

examination.  Following the introduction of plaintiff's exhibits, plaintiff-appellee rested his case-in-chief.

At the conclusion of plaintiff-appellee Carto's case-in-chief, defendant-appellant Oakley, through her counsel, orally moved for a judgment on partial findings under Federal Rule of Civil Procedure 52, as applicable to adversarial actions under Federal Rule of Bankruptcy Procedure 7052.[55]  Defendant-appellant Oakley rested her case-in-chief.[56]  The oral motion for judgment on partial findings was argued by counsel[57] and denied by Judge Fox.[58]

Having denied defendant-appellant Oakley's oral motion for judgment on partial findings, Judge Fox directed the parties to submit post-trial briefs.[59]

---

[55]     Trial Transcript, at page 182.

[56]     Id., pages 183-186.

[57]     Id., pages 186-202.

[58]     Id., page 202.

[59]     Id., pages 203-206.

Bankruptcy Judge Fox confirmed with the parties that a transcript of the trial would be produced (and utilized) in the post-trial briefing, and factored the transcription time into the briefing schedule.  Judge Fox told counsel for the parties that he would "take [his] time and be careful about" resolving their dispute and expressing the reasons for his disposition.  (Id. at page 206.)

In turn, Judge Fox requested that the parties take similar care in preparing their post-trial briefs and, in particular, that each provide citations to the record evidence (that is, the trial transcripts and exhibits admitted into evidence) supporting any factual averments in those post-trial briefs.

(Footnote 59 continued):

-19-

By Order and accompanying Memorandum dated and filed December 30, 2013, Bankruptcy Judge Fox sustained plaintiff-appellee Carto's objection under 11 U.S.C. § 727(a)(4) and denied defendant-appellant Oakley a Chapter 7 bankruptcy discharge.

Specifically, after trial, and based on the findings of fact set out at pages 2 through 13 of the Memorandum, Bankruptcy Judge Fox made the following conclusions of law:

> 1.   Mr. Carto proved by a preponderance of the evidence that Ms. Oakley's omissions or misstatements in her bankruptcy schedules and statement of financial affairs were made with "reckless indifference for the truth."

> 2.   Mr. Carto proved by a preponderance of the evidence that Ms. Oakley's omissions or misstatements were material to the administration of the bankruptcy case.

---

(Continuation of footnote 59):

Despite each counsel's assurances, the post-trial briefs submitted by counsel for Mr. Carto and counsel for Ms. Oakley did little to honor Judge Fox's request regarding record citations in support of their respective factual assertions.  (See Nunzio Carto's [Post-Trial] Legal Brief filed October 23, 2013 (Document 20 in E.D.Pa. Bankr. Action 13-00053) ("Plaintiff's Post-Trial Brief"), at pages 5 through 7 of 19; Annette Oakley's [Post-Trial Brief] Opposition in Response to Nunzio Carto's Legal Brief Seeking Non-Dischargeability of Debt from Bankruptcy, which post-trial brief was filed December 5, 2013 (Document 21 in E.D.Pa. Bankr. Action 13-00053)("Defendant's Post-Trial Brief"), at pages 3 through 8 of 12.)

Indeed, counsel for defendant-appellant Oakley made much of the failure of Plaintiff's Post Trial Brief to provide specific citations in support the factual assertions therein, (Defendant's Post-Trial Brief at page 4 of 12).  This, despite the fact that Defendant's Post-Trial Brief suffered from that very same affliction.  (See id. at pages 3 through 8 of 12.)

Despite this lack of meaningful assistance from either party's post-trial brief, Judge Fox diligently documented the record evidence supporting the findings of fact contained in his December 31, 2013 Memorandum.

-20-

3.    Ms. Oakley's chapter 7 discharge should be denied pursuant to 11 U.S.C. § 727(a)(4) for making a false oath or account, in not disclosing truthfully all of her financial information.

4.    Mr. Carto did not prove that Ms. Oakley obtained money from him by false pretenses, a false representation, or actual fraud, upon which he justifiably relied to his detriment, as required by [11 U.S.C. §] 523(a)(2)(A).

5.    Mr. Carto did not prove that Ms. Oakley used a statement in writing that was materially false, respecting her financial condition, upon which Mr. Carto reasonably relied, and with the intent to deceive him, as required by 11 U.S.C. § 523(a)(2)(B).

6.    Mr. Carto's claim against Ms. Oakley should not be held nondischargeable under 11 U.S.C. § 523(a)(2).[60]

## The Bankruptcy Appeal

Ms. Oakley timely filed a Notice of Appeal in the bankruptcy court on January 9, 2014.[61]

The appeal was docketed in this court on February 24, 2014.  A Notice filed on February 24, 2014 by the Clerk of Court required appellant to file and serve her brief within fifteen days from the entry of the appeal on the docket, and appellee to serve his brief within fifteen days after service of appellant's brief.[62]

---

[60]    Memorandum, page 14.

[61]    Notice of Appeal filed by defendant-appellant Annette Oakley on January 9, 2014 (Document 26 in E.D.Pa. Bankr. No. 13-00053).

[62]    Notice filed by Michael E. Kunz, Clerk of Court, on February 24, 2014.

Appellant Oakley filed and served her brief on March 27, 2014.  Appellee Carto filed and served his brief on May 22, 2014.[63]

Oral argument was held before me on February 18, 2015. At the close of oral argument, I took the matter under advisement.  Hence this Opinion.

### STANDARD OF REVIEW

The reviewing court -- be it a district court or a circuit court of appeals -- reviews "the bankruptcy court's legal determinations de novo, its factual findings for clear error[,] and its exercise of discretion for abuse thereof."  In re United Healthcare System, Inc., 396 F.3d 247, 249 (3d Cir. 2005)(internal quotations omitted).

In other words, the reviewing court "accept[s] the trial court's finding of historical or narrative facts unless clearly erroneous, but exercise plenary[64] review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991)(internal quotations omitted).

---

[63]     See footnote 1, supra.

[64]     Plenary review is synonymous with de novo review.  Scimeca v. Umanoff, 169 B.R. 536, 542 (D.N.J. 1993), aff'd sub nom. In re Scimeca, 30 F.3d 1488 (3d Cir. 1994).

A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re CellNet Data Systems, Inc., 327 F.3d 242, 244 (3d Cir. 2003) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

"Whether a debtor has made a false oath within the meaning of § 727(a)(4) is a question of fact." Williamson v. Fireman's Fund Insurance Company, 828 F.2d 249, 251 (4th Cir. 1987).

## CONTENTIONS OF THE PARTIES

### Contentions of Appellant

Debtor-appellant Oakley presents two issues for review in this bankruptcy appeal: (1) "Whether the bankruptcy court's denial of Defendant's Chapter 7 Bankruptcy [petition] under [11 U.S.C.] § 727(a)(4) was clearly erroneous as a [form of] relief granted to the Plaintiff which was not specifically sought in the adversary proceedings"; and (2) "Whether the bankruptcy court's finding[s] of fact[] in support of denying Defendant's Chapter 7 Bankruptcy [petition] under § 727(a)(4) was against the weight of the evidence presented at trial."[65]

In other words, defendant-appellant Oakley contends that (1) the bankruptcy court committed clear error by awarding

---

[65]     Brief of Appellant, page 1.

relief under 11 U.S.C. § 727(a)(4)(A) because plaintiff Carto did not provide notice to defendant Oakley that he was seeking such relief, and (2) if sufficient notice were provided, then the bankruptcy court erred in awarding the relief because such an award was against the weight of the evidence.[66]

### Contentions of Appellee

First, plaintiff-appellee Carto contends that although defendant-appellant Oakley filed a timely Notice of Appeal in the bankruptcy court, her appeal to this court should not be entertained because Ms. Oakley failed to file a timely appellant's brief in this court after her appeal was docketed here and in accordance with the February 24, 2014 Notice filed in this court setting the briefing schedule.[67]

Next, plaintiff-appellee Carto contends that the bankruptcy court correctly granted him relief, and correctly denied defendant-appellant Oakley's request for a bankruptcy discharge, pursuant to § 727(a)(4). That is, he contends that the bankruptcy court's decision should not be overturned on the grounds raised by appellant.[68]

Finally, plaintiff-appellee Carto separately raises, for the first time, in his responsive brief here, another

---

[66] Brief of Appellant, page 1.

[67] Brief of Appellee, page 17 of 31.

[68] Id., pages 18 through 21 of 31.

alleged error by the bankruptcy court.  Specifically, Mr. Carto contends that the bankruptcy court erred in finding that he did not sustain his burden of proof at trial to prove that defendant-appellant Oakley's debt to him was the product of fraud and was, thus, non-dischargeable pursuant to 11 U.S.C. § 532(a)(2)(A) and § 532(a)(2)(B).[69]

### DISCUSSION

### Timeliness of Briefs

First I address plaintiff-appellee Carto's contention that this court should refuse to entertain the merits of defendant-appellant Oakley's appeal because her brief was not timely filed.  This argument, which appellee does not develop in any significant way, is not compelling.

Although appellee Carto notes that district courts have the authority to dismiss a bankruptcy appeal where an appellant's brief is untimely, and that exercise of that authority is reviewed for abuse of discretion, he does not explain why it would be appropriate to exercise that authority in this case.[70]

---

[69]    Brief of Appellee, pages 22 through 30 of 31.

[70]    See Brief of Appellee at page 17 of 31 (citing Fed.R.Bankr.P. 8009(a), and Telesphere Communications v. 900 Unlimited, Inc., 177 F.3d 612 (7th Cir. 1999)).

The Notice filed in this case on February 24, 2014 by the Clerk of Court of this court provided the following briefing schedule:

(1) The Appellant shall serve and file [her] brief within 15 days after entry of the appeal on the docket.

(2) The Appellee shall serve and file his brief within 15 days after service of the brief of the Appellant.

(3) The Appellant may serve and filed a reply brief within 10 days after service of the brief of the Appellee.

This appeal was filed on the docket in this court on February 24, 2014.  Thus, the February 24, 2014 briefing Notice required appellant's brief to be filed on or before March 11, 2014 and appellee's brief to be filed approximately March 31, 2014, assuming that appellant's brief was timely filed electronically on the fifteenth day.[71]

Neither party complied with the briefing schedule established by the February 24, 2014 Notice.  No stipulation extending the briefing schedule was submitted to, or approved by, this court.  Appellant's brief was filed March 27, 2014. Appellee's brief was filed May 22, 2014.

---

[71]    March 31, 2014 represents fifteen days from March 11, 2014 (pursuant to the February 24, 2014 Notice), plus three days for electronic filing (pursuant to Fed.R.Civ.P. 5(b)(2)(E), and 6(d)) and two days because the third additional day would have been Saturday, March 29, 2014 (pursuant to Fed.R.Civ.P. 6(a)(1)(C)), all assuming appellant's brief was electronically filed on the fifteenth day (March 11, 2014).

Thus, appellant Oakley's brief was 16 days late (due March 11, 2014 under the February 24, 2014 Notice, but filed March 27, 2014).  However, appellee Carto's brief was 38 days late (due April 14, 2014 based upon the March 27, 2014 filing of appellant's brief,[72] but filed May 22, 2014).

Because appellee Carto has not demonstrated that he was prejudiced by appellant Oakley's untimely brief in his ability to respond to, or defend against, this appeal, and because his own brief was untimely by more than twice as many days as appellant's, I deny his request that I exercise my discretion and decline to hear this bankruptcy appeal based upon the untimely nature of appellant's brief.

### Bankruptcy Court's Grant of Relief to Plaintiff-Appellee and Denial of Discharge to Defendant-Appellant Under 11 U.S.C. § 727(a)(4)(A)

As noted above, defendant-appellant Oakley makes two claims of error related to the bankruptcy court's grant of relief to plaintiff-Appellee Carto, and denial of a discharge to appellant, under 11 U.S.C. § 727(a)(4).

First, appellant Oakley argues that the bankruptcy court erred in granting appellee Carto relief under 11 U.S.C.

---

[72]     April 14, 2014 represents fifteen days from March 27, 2015 pursuant to the February 24, 2014 briefing Notice, plus three additional days pursuant to Fed.R.Civ.P. 6(d) because the Brief of Appellant was filed electronically.

§ 727(a)(4) because "the record clearly established that plaintiff [Carto] sought exception [of the debt] under 11 U.S.C. § 523".[73]

Second, appellant Oakley argues that the bankruptcy court's decision to grant appellee Carto relief under § 727(a)(4) and to deny appellant a discharge was against the weight of the evidence and must be vacated in order to avoid a miscarriage of justice.[74]

I will address these issues in turn.

### Relief Not Specifically Requested

Defendant-appellant Oakley argues that the bankruptcy court's decision to grant plaintiff-appellee Carto relief, and deny appellant a discharge, under 11 U.S.C. § 727(a)(4) should be vacated because "the record clearly established that plaintiff sought exception [of the debt] under 11 U.S.C. § 523".[75]

The essence of appellant Oakley's argument is that she "was not duly put on notice of the relief that was sought under [Bankruptcy] Code Section 727(a)(4)...."[76]

---

[73]     Brief of Appellant, page 9.

[74]     Id., page 13.

[75]     Id., page 9; see id., pages 9-13.

[76]     [Transcript of Oral Argument Concerning ]Notice of Appeal re[.] Bankruptcy Matter[]Before the Honorable James Knoll Gardner[,] United States District Court Judge, dated February 18, 2015, at page 10.

Rather, according to appellant, she was only on notice that appellee was seeking relief under 11 U.S.C. § 523(a)(2)(A), § 523(a)(2)(B), and § 727(c)(2) -- the subsections of those two statutory sections cited in the Adversarial Complaint filed February 6, 2013.[77]

Section 523(a) governs exemptions to bankruptcy discharges.  It provides, in pertinent part, that

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> \*   \*   \*
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
>>>
>>> (B) use of a statement in writing—
>>>
>>>> (i) that is materially false;
>>>>
>>>> (ii) respecting the debtor's or an insider's financial condition;
>>>>
>>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>>>
>>>> (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(A)-(B).

---

[77]    Brief of Appellant, pages 10-11.

Plaintiff-appellee Carto, in his Adversarial Complaint, sought to have defendant-appellant Oakley's debt to him declared non-dischargeable pursuant to both § 523(a)(2)(A) and (B).  Appellant does not contend otherwise in this appeal.

Section 727 governs discharges and provides, in pertinent part:

> (a) The court shall grant the debtor a discharge, unless--
>
> *   *   *
>
> > (4) the debtor knowingly and fraudulently, in or in connection with the case--
> >
> > > (A) made a false oath or account;
> > >
> > > (B) presented or used a false claim;
> > >
> > > (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> > >
> > > (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]
>
> *   *   *
>
> (c)(1) The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.
>
> (2) On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for

denial of discharge.

11 U.S.C. § 727(a)(4), and (c).

Appellee Carto, in his Adversarial Complaint, requests both that the Chapter 7 Trustee make a determination if a discharge should be denied under [§] 727(c)(2)"[78] and that "this Court...[d]eny the Defendant a discharge under 11 U[.]S[.]C[.] § 727."[79]

Appellant Oakley is correct when she notes in her appeal brief that the Adversarial Complaint does not specifically cite subsection (a)(4) of § 727, and that the Adversarial Complaint cites subsection (c)(2) of § 727 (which allows a party to request the trustee to investigate whether grounds for denial of a discharge exist), rather than subsection (c)(1) (which allows a creditor to object to a discharge based on any of the grounds provided in subsection (a)) of § 727.[80]

As described above, subsections (c)(1) and (c)(2) of § 727 differ in the form of relief which they permit.  And although the Adversarial Complaint plainly cites subsection (c)(2) and requests an investigation by the Chapter 7 Trustee, the Adversarial Complaint just as plainly requests the

---

[78]    Adversarial Complaint, ¶ 12.

[79]    Id., page 3 of 3, ¶ c.

[80]    Brief of Appellant 10; see Adversarial Complaint, ¶¶ 12-13, and 15-16.

bankruptcy court to deny defendant-appellant a discharge
pursuant to § 727.[81]

More importantly, and most damaging to appellant's
argument that she was not on notice that appellee was seeking a
denial of discharge under § 727(a)(4), the paragraphs preceding
the prayer for relief in which Mr. Carto requests denial of
discharge under § 727 specifically allege the improper omission
of the two BMW automobiles from appellant's bankruptcy
schedules, and § 727(a)(4) includes false oaths and omissions as
a ground for denial of a discharge.  11 U.S.C. § 727(a)(4)(A).

When pursuing a claim under § 727(a)(4), a plaintiff
"must include more than just a bare allegation that a debtor
failed to list something on his schedules."  In re Smith,
489 B.R. 875, 897 (M.D.Ga. Bankr. 2013).  Here, as described
above, plaintiff-appellee Carto did more than generally assert,
and then seek to establish at trial, that defendant-appellant
Carto omitted unspecified property from her bankruptcy schedules
and Statement of Financial Affairs.  Rather, he alleged,
specifically, that she omitted the two BMW automobiles from her
filings.

For the reasons expressed above, defendant-appellant
Oakley's argument that the bankruptcy court's denial of her

---

[81]     Adversarial Complaint, ¶ 12 (requesting investigation by
trustee), and page 3, ¶ c. (requesting denial of discharge by the court).

discharge should be vacated because she was not sufficiently placed on notice of the relief plaintiff-appellee was seeking, is unavailing.

Having determined that the bankruptcy court did not err in finding that denial of discharge pursuant to § 727(a)(4) was among the forms of relief which plaintiff was seeking and of which defendant-appellant had sufficient notice, I now turn to appellant's contention that the bankruptcy court's grant of such relief to plaintiff-appellee was against the weight of the evidence.

### Weight of the Evidence

Defendant-appellant Oakley contends that the bankruptcy court's finding that her discharge should be denied under 11 U.S.C. § 727(a)(4)(A) was against the weight of the evidence and must be vacated to avoid a miscarriage of justice.[82]

In support of this contention, defendant-appellant argues that the bankruptcy court erred by "raising, for the first time, the court's perceived one month delay by the Defendant in disclosing attorney fees awarded in May, 2012 and received in November, 2012."[83]

---

[82]    Brief of Appellant, page 13.

[83]    Id., page 17 (citing Memorandum, page 27).  The entire quotation is italicized in appellant's brief.  I have omitted the italics here.

Appellant's argument misapprehends the portion of the bankruptcy court's December 30, 2013 Memorandum, cited in the Brief of Appellant, which purportedly demonstrates the court's alleged error.

The bankruptcy court did not find, or suggest, that Ms. Oakley was awarded attorney fees in May 2012, which she then failed to disclose in her initial Chapter 7 schedules and Statement of Financial Affairs filed November 9, 2012.

Rather, that portion of the bankruptcy court's Memorandum stated, among other things, that in May 2012 Ms. Oakley was seeking an award of statutory attorney fees in the McKenna case; [84] statutory fees were awarded to Ms. Oakley in

---

[84]   To the extent that defendant-appellant objects (see Brief of Appellant, page 17) to the bankruptcy court's factual statement that she "was seeking a court award of fees in that case no later than May 2012" (Memorandum, page 27), that objection is without merit.  That statement by the bankruptcy court demonstrates the taking of judicial notice of a fact -- namely, the timing of her request for attorney fees in the McKenna case.

"A judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Werner v. Werner, 267 F.3d 288, 295 (3d Cir. 2001).  "The Third Circuit has cautioned that we may not take judicial notice of a prior court opinion in order to establish the truth of the adjudicative facts on which the opinion is based." Montgomery v. Beneficial Consumer Discount Company, 2005 WL 497776, at *4 n.5 (E.D.Pa. Mar. 2, 2005) (Surrick, J.).  In Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir.1999), the Third Circuit explained that a court may take judicial notice of another court's Opinion, "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."

Here, even assuming, for the sake of argument, that the bankruptcy court erred by taking notice of the timing of Ms. Oakley's request for attorney fees in the McKenna case based upon the contents of Judge McLaughlin's October 25, 2012 Order and accompanying Memorandum, any such

(Footnote 84 continued):

-34-

the McKenna case in October 2012; and the fee award from the McKenna case was not disclosed in Ms. Oakley's November 9, 2012 schedules and Statement of Financial Affairs.[85]

Moreover, the bankruptcy court noted that the fees due to Ms. Oakley in the McKenna case were not the only fees outstanding and due her which Ms. Oakley omitted from both her initial and amended Schedule B[86] -- a finding supported by her schedules and her testimony at trial (elicited through her counsel) that in November 2011 she was owed approximately $75,000.00 in attorney fees in two other civil rights cases.[87]

Upon careful review of the bankruptcy court record, for the reasons expressed above, and for the reasons set forth by the bankruptcy court in its December 30, 2013 Memorandum, the denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A) was not against the weight of the evidence.

---

(Continuation of footnote 84):

error was harmless because the bankruptcy court could have taken proper judicial notice of a motion seeking attorney fees filed by Ms. Oakley pro se in the McKenna case on April 24, 2012, and a reply in further support filed May 18, 2012 (documents 363 and 373 in civil action number 99-cv-01163), based upon the docket entries of the United States District Court for the Eastern District of Pennsylvania.

[85]    Memorandum, page 27.

[86]    Id.

[87]    Trial Transcript, pages 58-59 and 72-74.

## Bankruptcy Court's Denial of Relief to Plaintiff-Appellee Under 11 U.S.C. § 523(a)

This alleged error raised by appellee Carto in his responsive brief is not properly before the court on appeal and may not be properly considered.

The Supreme Court of the United States has explained that it

> [has] repeatedly affirmed two linked principles governing the consequences of an appellee's failure to cross-appeal.  Absent a cross-appeal, an appellee may "urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court," but may not "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary."

El Paso Natural Gas Company v. Neztsosie, 526 U.S. 473, 479, 119 S.Ct. 1430, 1434-1435, 143 L.Ed.2d 635, 642 (1999)(quoting United States v. American Railway Express Company, 265 U.S. 425, 435, 68 L. Ed. 1087, 44 S. Ct. 560 (1924)).

The Court in El Paso Natural Gas further noted that the Court had "repeatedly expressed the rule in emphatic terms", such as in Helvering v. Pfeiffer, where the Court stated that, "[a]n appellee cannot without a cross-appeal attack a judgment entered below[.]" El Paso Natural Gas, 526 U.S. at 480, 119 S.Ct. at 1435, 143 L.Ed.2d at 643 (quoting Helvering v. Pfeiffer, 302 U.S. 247, 250-251, 58 S.Ct. 159, 160, 82 L.Ed. 231, 234 (1937)).

Here, plaintiff-appellee Carto, as described above, seeks to affirm the bankruptcy court's ruling in his favor with respect to his objection under 11 U.S.C. § 727(a)(4) and the bankruptcy court's denial of appellant Oakley's bankruptcy petition.

However, he also seeks, without having filed a cross-appeal, to attack the bankruptcy court's decision with a view to enlarging his rights by contending that the bankruptcy court erred when it found that he failed to carry his burden at trial to prove that appellant Oakley's debt to him was the product of fraud and was, thus, non-dischargeable pursuant to 11 U.S.C. § 532(a)(2)(A) and § 532(a)(2)(B).  See El Paso Natural Gas, supra.

In short, plaintiff-appellee Carto seeks to obtain from the district court more that which he was denied in the bankruptcy court after trial -- namely, a ruling from the bankruptcy court that appellant Oakley's debt to him was non-dischargeable pursuant to 11 U.S.C. § 532(a)(2)(A) and § 532(a)(2)(B) because appellant Oakley obtained the loan from Mr. Carto by fraudulent means.  To obtain such relief, Mr. Carto was required to file a cross-appeal.  He did not do so.

Accordingly, the issue of whether the bankruptcy court erred in denying appellee-plaintiff Carto's request for relief

under 11 U.S.C. § 532(a)(2)(A) and § 532(a)(2)(B) is not properly before this court and is not considered on the merits.

## CONCLUSION

For the reasons expressed above, I affirm the Order and accompanying Memorandum of Bankruptcy Judge Bruce Fox dated and filed December 30, 2013.